NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| MARILYN H., <br><br> Plaintiff, <br><br> v. <br><br> COMMISSIONER OF SOCIAL SECURITY, <br><br> Defendant. | Civil Action No.: 21-03334 <br><br> **OPINION & ORDER** |

**CECCHI, District Judge.**

**I.    INTRODUCTION**

Before the Court is the appeal of Marilyn H.[1] ("Plaintiff") seeking review of a final decision by the Commissioner of the Social Security Administration ("Commissioner" or "Defendant") denying her application for disability insurance benefits ("DIB") under the Social Security Act ("SSA" or the "Act").  ECF No. 1.  Plaintiff filed a brief in support of her appeal (ECF No. 12 ("Pl. Br.")) and Defendant replied (ECF No. 17 ("Def. Br.")).  This matter is decided without oral argument pursuant to Federal Rule of Civil Procedure 78.  For the reasons set forth below, the decision of the Administrative Law Judge ("ALJ") is affirmed.

**II.   BACKGROUND**

Plaintiff is a 58-year-old female who completed education through the twelfth grade in Cuba and previously worked as a packager.  ECF No. 7 ("Tr.") at 200, 223.  Plaintiff's disability application is predicated on her depression and associated symptoms.  *Id.* at 28, 317, 322.  During

---

[1] Pursuant to District of New Jersey standing order 2021-10, "any non-governmental party will be identified and referenced solely by first name and last initial" due to privacy concerns present in social security cases. D.N.J. Standing Order 2021-10; *see also Bryan S. v. Kijakazi*, No. 20-cv-11145, 2022 WL 2916072, at *1 n.1 (D.N.J. July 25, 2022).

1

medical evaluations, Plaintiff showed signs of depression, including a sad appearance, a tearful demeanor and slowed speech, appeared anxious, and reported symptoms including feeling very sad and hopeless, anhedonia, and periodic suicidal ideations. *Id.* at 29, 328, 342, 449. However, medical providers noted that Plaintiff's condition was improving over time (*id.* at 342, 365, 382, 386, 398) and that she showed unremarkable signs including normal cognitive functioning, friendly presentation, attentive behavior, full affect, normal thought processes and associations, intact memory, and appropriate thought content (*id.* at 328, 342, 382, 386). Plaintiff reported that she is able to drive a car, performs some household chores, dresses and bathes herself, cares for her dog, prepares simple meals, and goes out alone. *Id.* at 29–31, 242–44, 450. She likewise reported speaking with relatives over the phone, briefly visiting her father, spending time with family, and keeping track of her medications. *Id.*

On October 26, 2017, Plaintiff filed an application for DIB, alleging disability beginning on September 28, 2018 due to her depression. *Id.* at 26, 200, 222. Plaintiff's claim for DIB was denied initially and on reconsideration. *Id.* at 63–81. Plaintiff requested and was granted a hearing before an ALJ held on October 31, 2019, at which Plaintiff, who was represented by counsel, appeared and testified, as did a vocational expert ("VE"), Christina Boardman. *Id.* at 43–62. On June 2, 2020, the ALJ issued a decision that Plaintiff was not disabled. *Id.* at 26–38. Thereafter, the Social Security Administration's Appeals Council denied Plaintiff's request for review of the ALJ's decisions. *Id.* at 6–14. This appeal followed.

### III. LEGAL STANDARD

#### A. Standard of Review

This Court has jurisdiction to review the Commissioner's decision under 42 U.S.C. §§ 405(g), 1383(c)(3). The Court is not "permitted to re-weigh the evidence or impose [its] own

factual determinations," but must give deference to the administrative findings. *Chandler v. Comm'r of Soc. Sec.*, 667 F.3d 356, 359 (3d Cir. 2011); *see also* 42 U.S.C. § 405(g). Nevertheless, the Court must "scrutinize the record as a whole to determine whether the conclusions reached are rational" and substantiated by substantial evidence. *Gober v. Matthews*, 574 F.2d 772, 776 (3d Cir. 1978) (citations omitted). Substantial evidence is more than a mere scintilla and is defined as "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Chandler*, 667 F.3d at 359 (citations omitted). If the factual record is adequately developed, substantial evidence "may be 'something less than the weight of the evidence, and the possibility of drawing two inconsistent conclusions from the evidence does not prevent an administrative agency's finding from being supported by substantial evidence.'" *Daniels v. Astrue*, No. 08-cv-1676, 2009 WL 1011587, at *2 (M.D. Pa. Apr. 15, 2009) (quoting *Consolo v. Fed. Mar. Comm'n*, 383 U.S. 607, 620 (1966)). In other words, under this deferential standard of review, the Court may not set aside the ALJ's decision merely because it would have come to a different conclusion. *See Cruz v. Comm'r of Soc. Sec.*, 244 F. App'x 475, 479 (3d Cir. 2007).

### B. Determining Disability

In order to be eligible for benefits under the SSA, a claimant must show she is disabled by demonstrating an inability to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than twelve months." 42 U.S.C. §§ 423(d)(1)(A), 1382c(a)(3)(A). Considering the claimant's age, education, and work experience, disability is evaluated by the claimant's ability to engage in her previous work or any other form of substantial gainful activity existing in the national economy. *Id.* §§ 423(d)(2)(A); 1382c(a)(3)(B). A claimant is disabled for SSA purposes only if her physical or mental

3

impairments are "of such severity that [s]he is not only unable to do [her] previous work, but cannot, considering [her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." *Id.* § 1382c(a)(3)(B).

Decisions regarding disability are made individually and will be "based on evidence adduced at a hearing." *Sykes v. Apfel*, 228 F.3d 259, 262 (3d Cir. 2000) (citing *Heckler v. Campbell*, 461 U.S. 458, 467 (1983)). Congress has established the type of evidence necessary to prove the existence of a disabling impairment by defining a physical or mental impairment as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. §§ 423(d)(3); 1382(a)(3)(D).

### C.   Sequential Evaluation Process For A Continuing Disability

The Social Security Administration follows a five-step, sequential evaluation to determine whether a claimant is disabled under the SSA. 20 C.F.R. §§ 404.1520, 416.920.

First, the ALJ must determine whether the claimant is currently engaged in substantial gainful activity. *Sykes*, 228 F.3d at 262. Second, if the claimant is not engaged in such activity, the ALJ determines whether the claimant has any impairments severe enough to limit her ability to work. *Id.* Third, if she has any severe impairments, the ALJ considers the medical evidence to determine whether the impairment or combination of impairments is included in 20 C.F.R. Part 404, Subpt. P, App. 1 (the "Listings"). If the claimant's impairment(s) medically equal one of the Listings, this results in a presumption of disability. *Sykes*, 228 F.3d at 262. If the impairment is not in the Listings, the ALJ must determine how much residual functional capacity ("RFC") the applicant retains despite her impairment. *Id.* at 263. Fourth, the ALJ must consider whether the claimant's RFC is adequate to perform her past relevant work. *Id.* Fifth, if her RFC is not

sufficient to perform past work, the ALJ must determine whether there is other work in the national economy the claimant can perform.  *Id.*

The evaluation continues through each step unless it is ascertained at any point that the claimant is or is not disabled.  20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4).  The claimant bears the ultimate burden of establishing steps one through four of this test.  *Hess v. Comm'r Soc. Sec.*, 931 F.3d 198, 202 (3d Cir. 2019).  The burden shifts to the Commissioner at step five to prove that the claimant can perform a job that exists in the national economy.  *Ramirez v. Barnhart*, 372 F.3d 546, 555 (3d Cir. 2004).

## IV.     DISCUSSION

### A.     Summary of the ALJ's Decision

While Plaintiff has asserted a disability as of September 28, 2017, the ALJ found Plaintiff was not disabled under the Act from the alleged onset date through the date of the decision.  Tr. at 26–38.  In reaching this determination, the ALJ engaged in the sequential analysis enumerated in 20 C.F.R. § 404.1594(f).  *See id.*

Specifically, at step one, the ALJ found that Plaintiff was not engaged in substantial gainful activity since September 28, 2017, the alleged onset date.  *Id.* at 28.  The ALJ noted that while Plaintiff had worked since that date, her earnings in 2018 totaled $5,863.00, which fell significantly below the level for substantial gainful activity.  *Id.*

At step two, the ALJ found that Plaintiff had the severe impairment of depressive disorder with psychosis, but that other conditions and symptoms identified in Plaintiff's medical records constituted non-severe or non-medically determinable impairments.  *Id.* at 28–29.

At step three, the ALJ determined that Plaintiff's severe impairment of depressive disorder with psychosis did not meet or medically equal the severity of one of the relevant impairments

enumerated in 20 C.F.R. Pt. 404, Subpt. P, App. 1. *Id.* at 29. In reaching this conclusion, the ALJ determined that the "paragraph B" criteria were not satisfied because Plaintiff's mental impairments did not cause at least two marked limitations or one extreme limitation. *Id.* at 29–31. Moreover, the ALJ found that Plaintiff's condition likewise failed to satisfy the "paragraph C" criteria because Plaintiff had no more than moderate limitations in her ability to adapt or manage herself. *Id.* at 31.

Next, the ALJ fashioned Plaintiff's RFC. *Id.* at 31–37. Based on the record, the ALJ determined that Plaintiff had the RFC to perform a full range of work at all exertional levels, but, from a mental standpoint, "would be limited to simple unskilled work in a low contact environment meaning only occasional interaction with coworkers, supervisors, and the public." *Id.* at 31. The ALJ further noted that Plaintiff "also requires a low stress environment meaning no fast-paced production quotas and only occasional judgement/decision making required." *Id.*

At step four, the ALJ considered whether Plaintiff had the RFC to perform the requirements of her past relevant work. *Id.* at 37. Therein, the ALJ determined, based on the evidence in the record and the testimony from the VE, that Plaintiff was not precluded from being able to perform the work-related activities of being a packager, her previous occupation. *Id.* Accordingly, the ALJ determined that Plaintiff had not been under a disability, as defined in the Act, from the alleged onset date through the issuance of the decision. *Id.*

    **B.**    **Plaintiff's Arguments on Appeal**

In the instant appeal, Plaintiff seeks an order from the Court remanding this matter back to the ALJ for further proceedings and a new decision. Pl. Br. at 7. Plaintiff sets forth two primary contentions on appeal: First, Plaintiff contends that the ALJ erred in determining that Plaintiff had the mental RFC to perform "low stress simple unskilled work." *Id.* at 7–21. Second, Plaintiff

argues that the ALJ erred in reaching her medical equivalence findings at step three. *Id.* at 7, 21–39. The Court considers each argument, in turn, below.

### 1. RFC Determination

The crux of Plaintiff's first argument on appeal is that the ALJ did not adequately articulate how the evidence in the record and her stage two and stage three determinations yield an RFC under which Plaintiff can perform "low contact, low stress, simple unskilled work." *Id.* at 10, 19. The Commissioner replies that the ALJ fully and properly articulated her RFC rationale and, therefore, remand is unwarranted. Def. Br. at 8–14.

A disability benefits claimant's RFC is the most she can do when factoring in her functional limitations. 20 C.F.R. § 404.1545(a); SSR 96-8p. An ALJ is tasked with fashioning the claimant's RFC based on evidence including medical records, medical opinions, and the claimant's subjective complaints. 20 C.F.R. § 404.1546(c). Here, the ALJ determined that the Plaintiff:

> has the residual functional capacity to perform a full range of work at all exertional levels. From a mental standpoint, the claimant would be limited to simple unskilled work in a low contact environment meaning only occasional interaction with coworkers, supervisors, and the public. The claimant also requires a low stress environment meaning no fast-paced production quotas and only occasional judgement/decision making required.

Tr. at 31. The Court finds that the ALJ properly examined the evidence in the record in reaching this decision and sufficiently articulated the bases for her conclusion.

In fashioning Plaintiff's RFC, the ALJ first concluded that Plaintiff had a medically determinable impairment that could reasonably be expected to cause some of the alleged symptoms. *Id.* at 32. However, the ALJ further noted that Plaintiff's statements regarding the intensity, persistence, and limiting effects of the complained-of symptoms were not entirely consistent with objective medical evidence in the record. *Id.* In reaching this determination, the ALJ cited to reports from numerous medical professionals, including Maria Saiz, M.D., Paul Hriso,

M.D., Mohammad Amar Chaudry, M.D., Joyce Echo, Ph.D., and Mercedes Rudelli, M.D., along with state agency psychologists Pamela Foley, Ph.D. and Crystal Duclos, Psy.D. *See id.* at 32–36. The ALJ noted that objective medical evidence revealed that: Plaintiff has reported to medical providers that she was "'feeling good' or 'better' with a reduction in her symptoms" and that her "behavior condition and symptoms were stable" (*id.* at 32); Plaintiff denied having psychiatric problems and symptoms and exhibited, among other things, normal speech, appropriate behavior, logical thinking, intact associations, cognitive functioning, memory, and attention (*id.* at 32–33); and Plaintiff informed the providers that she had no symptoms of mania, personality disorder, defiant behavior, compulsiveness, obsessive thoughts, delusions, or hostility (*id.* at 33).

The ALJ supplemented her examination of the medical evidence and reports with Plaintiff's self-reporting of activities and her sister's third-party function report, which revealed *inter alia* that Plaintiff cleans and dresses herself daily, is able to take care of personal needs, drives an automobile, uses a phone, takes care of her dog, performs certain household chores, goes to the store, and travels independently outside the home. *Id.* The ALJ explained how Plaintiff's ability to engage in such tasks was "persuasive" evidence "because it shows that the claimant has the ability to engage in multiple mental activities, such as getting along with others, remembering, completing tasks, concentrating, understanding, following instructions, etc." *Id.* Further, the ALJ noted how driving, based on the tasks associated with doing so, "tends to establish that the claimant has the ability to perform a wider range of activities than alleged by the claimant." *Id.*

The ALJ also considered the opinion evidence in the record. *Id.* at 34–36. For example, the ALJ cited the persuasive findings of Dr. Echo, a consultive examiner, which suggested that the only marked limitation Plaintiff would have is in her ability to carry out complex instructions and make complex decisions. *Id.* at 33–34. Moreover, the ALJ credited the opinions of state agency

8

psychologist, Dr. Foley, who found that Plaintiff would be able to perform simple, repetitive tasks. *Id.* at 34–35. Additionally, the ALJ discredited the opinions of state agency psychologist Dr. Dulos, who opined that Plaintiff had non-severe mental impairments and would have only mild limitations, finding them in conflict with the evidence in the record establishing a severe mental impairment. *Id.* at 35–36.

The above discussion reflects that the ALJ's determination regarding Plaintiff's RFC and the associated mental restrictions were made based on a holistic review of the record, a proper weighing of the evidence, and sufficient analysis, including incorporating limitations identified at earlier stages of the sequential process. Indeed, an ALJ may properly fashion an RFC that accounts for a claimant's limitations without specifically invoking the findings made at step two and step three. *See Hess*, 931 F.3d at 209 (explaining that "no incantations are required at steps four and five simply because a particular finding has been made at steps two and three. Those portions of the disability analysis serve distinct purposes and may be expressed in different ways" and, therefore, "the findings at steps two and three will not necessarily translate to the language used at steps four and five"). In short, a reading the ALJ's decision as a whole reveals there is substantial evidence and sufficient analysis supporting the ALJ's RFC determination, and remand is not warranted on that basis.[2]

## 2. Medical Equivalence Findings

Plaintiff also contends that the ALJ erred at step three in her medical equivalence findings. Plaintiff specifically takes issue with the ALJ's purported failure to consider one of Plaintiff's

---

[2] Insofar as Plaintiff contends that the ALJ improperly omitted an explanation as to why alternate hypotheticals to the VE were not accepted, such an argument is without merit. The ALJ has discretion as to how to fashion a hypothetical question to a VE based on the credible evidence in the record. *See Zirnsak v. Colvin*, 777 F.3d 607, 615 (3d Cir. 2014).

"twin acknowledged mental impairments" under paragraph A, her supposed misunderstanding of the evaluation of Plaintiff's condition under paragraph B, and her lack of supporting rationale in rejecting Plaintiff's satisfaction of paragraph C. Pl. Br. at 7. The Commissioner responds that the ALJ did not err at step three and properly concluded that Plaintiff was not *per se* disabled under the medical listings. Def. Br. at 14–19.

At step three, the ALJ is tasked with determining whether a DIB claimant has an impairment or combination of impairments that meets or medically equals the severity of an impairment listed in 20 C.F.R. §§ 404.1520(d), 404.1525, and 404.1526. Where a claimant has multiple impairments, an ALJ will look to see whether the combination of impairments is of at least equal medical significance to a listed impairment. 20 C.F.R. § 404.1525(c)(3). The ALJ's step three determination must be accompanied by a reason for the decision; a mere conclusory statement is insufficient. *Burnett v. Comm'r of Social Sec. Admin.,* 220 F.3d 112, 119 (3d Cir. 2008) (conclusory statements by an ALJ are beyond meaningful judicial review). However, no particular format or language is required for the ALJ's analysis. *See Bell v. Saul*, No. 2:18-CV-3359, 2021 WL 287882, at *4 (D.N.J. Jan. 28, 2021) (citing *Jones v. Barnhart*, 364 F.3d 501, 505 (3d Cir. 2004)). "Accordingly, if the administrative decision, 'read as a whole, illustrates that the ALJ considered the appropriate factors in reaching the conclusion that [the claimant] did not meet the requirements for any listing,' '[t]his discussion satisfies *Burnett*'s requirement that there be sufficient explanation to provide meaningful review of the step three determination.'" *Id.* (quoting *Jones*, 364 F.3d at 505).

At this step, Plaintiff first contends that the ALJ erred in failing to consider Listing 12.03,[3]

---

[3] Listing 12.03 deals with "[s]chizophrenia spectrum and other psychotic disorders." 20 C.F.R. Pt. 404, Subpt. P, App. 1

10

arguing that the step two determination should be understood as having found two district impairments: depressive disorder *and* psychosis. Pl. Br. at 25. Although Plaintiff is correct in her contention that an ALJ must consider a claimant's impairments in combination where more than one is present (*Torres v. Comm'r*, 279 F. App'x 149, 154 (3d Cir. 2008)), Plaintiff appears to misstate the ALJ's stage two determination. Therein, the ALJ determined that Plaintiff had the severe impairment of "depressive disorder with psychosis," not depressive disorder *and* psychosis as independent impairments. Tr. at 28. Thus, there was no *combination* of severe impairments to consider. Further, numerous decisions from district courts across the nation reveal that "major depressive disorder with psychosis" is routinely considered under Listing 12.04. *See, e.g.*, *Cramer v. Astrue*, No. CIV.A. 10-125E, 2011 WL 4472847, at *5 (W.D. Pa. Sept. 26, 2011); *Nickerson v. Berryhill*, No. 4:15-CV-02727, 2017 WL 1106302, at *8, 17 (S.D. Tex. Mar. 24, 2017); *Carvajales v. Colvin*, No. 12-23951-CIV, 2015 WL 11201210, at *3, 5–6 (S.D. Fla. Mar. 13, 2015). Finally, multiple mental impairment listings, including Listings 12.03 and 12.04, utilize the same paragraph B criteria and therefore involve the same analysis. *See Thomas v. Comm'r of Soc. Sec.*, No. 2:14-0627, 2015 WL 5921515, at *6–7 (D.N.J. Oct. 9, 2015) (noting that the criteria of paragraphs B and C of Listings 12.03 and 12.04 are identical and that "[t]he ALJ's finding that the criteria of Listing 12.04 were not satisfied would necessitate a similar finding as to Listing 12.03"); *Ernesto R. v. Comm'r of Soc. Sec.*, No. CV 20-6170 (SDW), 2021 WL 5356110, at *8 (D.N.J. Nov. 17, 2021) ("To the extent Plaintiff argues that the ALJ erred by not specifically mentioning Listing 12.04 (Depressive, Bipolar, and Related Disorders), any such error was harmless because Plaintiff could not meet all of the requirements of that listing. The ALJ explicitly determined that Plaintiff did not satisfy the paragraph B criteria of Listing 12.03, and thus sufficiently addressed Listing 12.04, which has the same criteria. *Compare* 20 C.F.R. Pt. 404, Subpt. P, App. 1, § 12.03, with *id.*

11

§ 12.04."). Therefore, the ALJ's analysis of Plaintiff's depressive disorder with psychosis exclusively under Listing 12.04 would not constitute a harmful error under the circumstances.

Next, Plaintiff argues that the ALJ improperly relied upon her daily activities as a basis for finding only moderate limitations with respect to three of the "paragraph B" criteria. The "paragraph B" criteria of the mental disorders Listings require the ALJ to determine the degree of functional loss in four areas considered essential to the ability to work: (1) understanding, remembering, and applying information; (2) interacting with others; (3) the ability to concentrate, persist, or maintain pace; and (4) adapting or managing oneself. 20 C.F.R. Pt. 404, Subpt. P., App. 1, §§ 12.04, 12.06. These areas are rated on the following five point scale: none, mild, moderate, marked and extreme. *Id.* §§ 404.1520a(c)(4), 416.920a(c)(4). A claimant may demonstrate that she meets Listing 12.04 by proving that she meets the Listings' "A" criteria, as well as having two marked or one extreme limitation in the Listings' "B" criteria areas. 20 C.F.R. Pt. 404, Subpt. P, App. 1, §§ 12.04, 12.06.

Here, the ALJ found that Plaintiff was markedly limited in understanding, remembering, or applying information; moderately limited in interacting with others; moderately limited in concentrating, persisting, or maintaining pace; and moderately limited in adapting or managing oneself.[4] Tr. at 29–31. In reaching this determination the ALJ did not find that Plaintiff's daily activities equated to the ability to work, but found rather that these activities contradicted certain evidence in the record and supported a finding that Plaintiff had no marked or extreme limitations in the "B" criteria areas. *See id.* Use of daily activities for such a purpose is permissible. *See Adrienne L. v. O'Malley*, No. 1:21-CV-20492, 2024 WL 208963, at *13 (D.N.J. Jan. 19, 2024) ("It was also proper for the ALJ to consider other record evidence, including

---

[4] Plaintiff does not challenge the marked limitation, but rather the three moderate limitations.

Plaintiff's daily life activities, when analyzing Dr. Brown's findings and the extent of Plaintiff's mental impairments."); *see also Benitez v. Barnhart*, 98 F. App'x 926, 926–27 (3d Cir. 2004) ("Similarly, we can find no fault with the methodology of the ALJ's evaluation of Ms. Benitez's subjective complaints of pain. In particular, the ALJ properly relied upon the testimony regarding Ms. Benitez's extensive daily activities which constituted substantial evidence supporting his conclusion that her complaints were not entitled to full credence."). Moreover, the ALJ's determinations were consistent with the opinions of Dr. Echo as cited to by the ALJ. *See* Tr. at 29–31. Indeed, Dr. Echo opined that while Plaintiff would have marked limitations of her ability to carry out complex instructions and make judgments on complex work-related decisions, all other limitations would be non-existent, mild, or moderate. *Id.* at 452–53.

Ultimately, the ALJ's determinations are supported by "more than a mere scintilla" of evidence, rendering them sufficient. *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019). Critically, even if the Court were to accept Plaintiff's contentions, Plaintiff still fails to affirmatively point to *anything* in the record that demonstrates that more severe limitations are warranted. *See Michele C. v. Kijakazi*, No. 1:21-CV-2051, 2022 WL 5242283, at *9 (D.N.J. Oct. 6, 2022) ("Although she challenges the ALJ's consideration of the paragraph B criteria, Plaintiff does not explain why— nor does she even assert that—she has an extreme limitation in one of the four areas of mental functioning or two marked limitations in any of those four areas. Plaintiff, who bears the bears the burden of proof at step three, therefore has failed to articulate why her impairments meet or medically equal Listings 12.04 or 12.06." (internal citation and footnote omitted)); *Meyler v. Comm'r of Soc. Sec.*, 238 F. App'x 884, 889 (3d Cir. 2007) (noting that the plaintiff bears the burden of proving at step three that his impairments meet or medically equal a listing). *Cf. Shinseki v. Sanders*, 556 U.S. 396, 409–10 (2009) ("[T]he burden of showing that an error is harmful

normally falls upon the party attacking the agency's determination.... [T]he party seeking reversal normally must explain why the erroneous ruling caused harm.").[5]

## V. CONCLUSION

In sum, the ALJ properly applied the sequential analysis, and reached the determination that Plaintiff was not disabled within the meaning of the Act based on the substantial evidence in the record. Thus, the ALJ's decision is affirmed.

Accordingly, **IT IS** on this 13th day of March, 2024:

**ORDERED** that Plaintiff's appeal (ECF No. 1) is **DENIED**; and it is further

**ORDERED** that the decision of the Administrative Law Judge is hereby **AFFIRMED**; and it is further

**ORDERED** that the Clerk of the Court shall mark this matter as **CLOSED**.

**SO ORDERED**.

*s/Claire C. Cecchi*
**CLAIRE C. CECCHI, U.S.D.J.**

---

[5] Plaintiff's arguments about the ALJ's assessment of the paragraph C criteria are likewise unavailing. The ALJ explains that "the evidence fails to establish the presence of the 'paragraph C' criteria because the claimant has no more than moderate limitations in her ability to adapt or manage herself." Tr. at 31. Further discussion would be unnecessarily duplicative as the functional area of adapting and managing oneself is also a paragraph B criteria which the ALJ properly examined on the prior page of the decision. *See id.* at 30. Moreover, the ALJ's paragraph C findings again cite to supporting evidence in the form of Plaintiffs' reporting of her activities and routine and Dr. Echo's report. *Id.* at 31.